UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

HERBERT DAVIS,

       Plaintiff,

v.

PAUL W. MURPHY, STEPHEN M. MEADE, and STEPHEN C. McMANUS, in their individual capacities,

       Defendants

Civil Action No. 13-cv-11900-IT

THIRD ORDER ON: 1) PLAINTIFF'S MOTION FOR ORDER TO PRODUCE SUBPOENAED RECORDS FORTHWITH, OR TO SHOW CAUSE WHY THE KEEPER OF RECORDS OF THE SUFFOLK COUNTY DISTRICT ATTORNEY'S OFFICE SHOULD NOT BE HELD IN CONTEMPT FOR FAILURE TO COMPLY WITH SUBPOENA (#53); and 2) KEEPER OF RECORD'S MOTION TO QUASH OR MODIFY SUBPOENA (#55)

June 25, 2015

CABELL, U.S.M.J.

       This is the third and final order on (1) Plaintiff Herbert Davis's motion for an order to produce subpoenaed records and (2) non-party the Keeper of Records of the Suffolk County District Attorney's Office's ("the D.A.'s Office") cross-motion to quash. The Court's first two orders resolved the bulk of the issues raised in the motions, leaving only the question of which of the documents withheld as privileged by the D.A.'s Office should be produced. All of the disputed documents are currently in the possession of counsel for the parties, subject to a protective order limiting their use. The Court has considered the parties' briefs, the law, and reviewed the actual documents in question. As a result, and as explained below, the Court now

orders that certain of the documents be freed from the limitations of the protective order and made available for use in the discovery and trial of this case. Other documents which are privileged without a counterbalancing compelling need for their use shall be returned to the D.A.'s Office or destroyed.

## I. BACKGROUND

This is a civil rights case brought under 42 U.S.C. § 1983. The plaintiff alleges false arrest, due process violations, malicious prosecution and false imprisonment. (Dkt. No. 1) The plaintiff was arrested after a confidential informant told the Boston Police that the plaintiff had offered to sell the informant assault weapons and cocaine. The plaintiff was subsequently released approximately four months later after the commonwealth turned over a video of the transaction which demonstrated that the plaintiff was not the person with whom the informant dealt. (*Id.*) The D.A.'s Office thereafter decided it would not prosecute the case. (*Id.*)

Defendants Paul W. Murphy, Stephen M. Meade and Stephen C. McManus (collectively, "the defendants") are all officers of the Boston Police Department. (*Id.*) They dispute the plaintiff's characterization of the investigation that led to the plaintiff's arrest, the nature of the defendants' involvement in that investigation and the defendants' awareness of the existence of the video exculpating the plaintiff, among other things. (Dkt. Nos. 11-13)

### A. The Plaintiff's Subpoena and Related Discovery Motions

On November 14, 2014, the plaintiff served a subpoena on the D.A.'s Office, a non-party, seeking documents related to the criminal case against the plaintiff. (Dkt. No. 53-2) The D.A.'s Office requested and received an open-ended extension of the subpoena response deadline. (Dkt. No. 56-3) In early December, the plaintiff, through a new attorney, took the position that the extension granted was for production of documents only and that the D.A.'s Office had waived

objections by not serving a written response by the original return date for the subpoena. (Dkt. No. 56-5)

On December 28, 2014, the plaintiff filed a Motion to Compel Production or Show Cause Why the Keeper of Records of the D.A.'s Office Should Not Be Held in Contempt. (Dkt. No. 53) The D.A.'s Office opposed that motion and filed its own Motion to Quash or Modify Subpoena. (Dkt. No. 56)

### B. The Court's First Order

On December 31, 2014, the Court issued an order setting a hearing date for the motions and directing the D.A.'s Office to make its production, serve a privilege log, and file an affidavit stating the steps it had taken to comply with the subpoena. The D.A.'s Office filed an affidavit explaining its document collection and review process but it did not serve a privilege log. (Dkt. No. 59) Ultimately, the D.A.'s Office did identify a universe of responsive documents; it produced some of them and withheld others on the basis of privilege.

### C. The Court's Second Order

On January 13, 2015, the Court issued an order finding that the D.A.'s Office had not waived its privilege objections. The Court directed the D.A.'s Office to serve copies of the withheld documents for the limited purpose of litigating whether they should in fact be deemed privileged. (Dkt. No. 60.) The D.A.'s Office did so and the parties in turn filed briefs identifying 36 potentially privileged documents they would like to use in this case. (Dkt. Nos. 68 and 69) The D.A.'s Office has filed an opposition. (Dkt. No. 70) Thus, the issue to be decided is which if any of the disputed documents the D.A.'s Office should be required to produce for use in this case.

## II. LEGAL STANDARD

As the party "resisting discovery," the D.A.'s Office has the burden of establishing that the documents at issue are privileged or otherwise protected from discovery. *Stamps v. Town of Framingham*, 38 F. Supp. 3d 134, 140 (D. Mass. 2014)(citing *FDIC v. Ogden Corp.*, 202 F.3d 454, 460 (1st Cir. 2000). The D.A.'s Office argues that the documents are protected by either (1) the deliberative process privilege, (2) the work product doctrine, or (3) the investigative privilege. In addition, the D.A.'s Office contends that criminal records the plaintiff seeks are restricted from disclosure by state law. As discussed below, these protections are not absolute and a party may obtain the information by showing the privilege/protection is not applicable on the facts of the case or, if it is, by making a sufficient showing of need for the information sought.

### A. Deliberative Process Privilege

"The deliberative process privilege generally protects the ability of government agencies to make fully informed decisions, by barring discovery of materials that expose the internal process by which those decision were made." *Starkey v. Birritteri*, No. 12-10988-RWZ, 2013 WL 3984599, at *2 (D. Mass. Aug. 2, 2013) (citing *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 150-52 (1975)). Prosecutorial decisions are covered by the privilege. *Id.* (citations omitted).

For each document for which prosecutorial privilege is claimed, the D.A.'s Office must show that: 1) the document was "prepared prior to a final decision 'in order to assist an agency decision maker in arriving at his decision;'" and 2) the document is "'a direct part of the deliberative process in that it makes recommendations or expresses opinions on legal or policy matters.'" *Town of Norfolk v. U.S. Army Corps of Engineers*, 968 F.2d 1438 (1st Cir. 1992)(citing *NLRB*, 421 U.S. at 151).

### B. Work Product

The work-product doctrine protects documents "prepared in anticipation of litigation or for trial by or for another party or its representative." Fed. R. Civ. P. 26(b)(3)(A). "The purposes underlying the doctrine include protecting an attorney's ability to formulate legal theories and prepare cases, preventing opponents from 'free loading' off their adversaries' work, and preventing interference with ongoing litigation." *Stamps*, 38 F. Supp. 3d at 144 (citing *Jean v. City of New York*, No. CV-09-801, 2010 WL 148420 (E.D.N.Y. Jan. 12, 2010)(internal quotations omitted)).

Because Rule 26 refers to documents prepared by or for a "party," some courts have held that non-parties like the D.A.'s Office cannot assert work product protection. *See id.* at 143-44 (stating that "many courts have found the work-product privilege unavailable when a prosecutor in a prior criminal investigation later objects to discovery by a litigant in a related and subsequent civil lawsuit" and collecting cases). Other courts allow non-parties to invoke the work product doctrine where doing so advances the public policies underpinning the doctrine. *See, e.g., Starkey*, 2013 WL 3984599 at *1. Here, there is not ongoing litigation or a concern that the parties will "free load" of the work of the D.A.'s Office. However, allowing the D.A.'s Office to invoke the doctrine would protect the prosecutorial process by affording the D.A.'s Office "a certain degree of privacy" in preparing cases. *United States v. Nobles*, 422 U.S. 225, 237 (1975)(quoting *Hickman v. Taylor*, 329 U.S. 495 (1947)). For that reason, the Court will allow the D.A.'s Office to assert work product protection for documents prepared in anticipation of litigation.

### C. Investigative Privilege

Massachusetts law previously recognized a common-law privilege for information provided to law enforcement agencies. However, "[a]s applied to written records, the common-

law privilege . . . has been superseded by the Massachusetts public records statute, Mass. Gen. Laws ch. 66, sec. 10." *Starkey*, 2013 WL 3984599 at *3 (citing *Dist. Att'y for Norfolk Dist. v. Flatley*, 419 Mass. 507 (1995)). The statutory protection from disclosure for investigatory materials applies only where disclosure "would probably so prejudice the possibility of effective law enforcement that such disclosure would not be in the public interest." *Id*. Given that the investigation in this case has long since ended, the risk of prejudice to effective law enforcement is minimal and does not outweigh the parties' need for these documents. *Id*. Accordingly, the investigative privilege does not provide a basis to withhold any of the documents at issue.

### D. **CORI**

One of the documents that the plaintiff seeks contains criminal offender record information, the dissemination of which is restricted by state law. See Mass. Gen. Laws ch. 6, § 167 *et seq*. However, the document sought only contains information about the plaintiff and can properly be produced in this lawsuit. *Id.; see also Starkey*, 2013 WL 3984599 at *1.

### III. ANALYSIS

For each of the 36 documents at issue, the Court has undertaken a two-step analysis. First, the Court determined whether the document is protected by either the deliberative process privilege or work product doctrine. Second, for all such identified documents, the Court determined whether they should nonetheless be produced. Both deliberative process privilege and work product protection are qualified and the standard for overcoming the two protections is similar. Documents that are relevant, helpful and unavailable from other sources should generally be produced. *In re Pharmaceutical Indus. Wholesale Price Litig.*, 254 F.R.D. 35, 40 (D. Mass. 2002)(standard for overcoming prosecutorial privilege); *In re Grand Jury Subpoena*, 220 F.R.D. 130, 145 (D. Mass. 2004)(opinion work product should be produced if there is a compelling need and ordinary work product on a lesser showing).

In determining the parties' need for particular documents, the court is guided by the analysis in *Velazquez v. City of Chicopee*, 226 F.R.D. 31 (D. Mass. 2004), a case factually similar to this one. *Velazquez* involved a civil rights suit against police officers and a city in which the plaintiff allegedly served a lengthy prison sentence for rape because exculpatory evidence had been improperly withheld. *Id*. at 32. The plaintiff subpoenaed the district attorney's files regarding his prosecution and the district attorney refused to produce them on the grounds of the deliberative process privilege and work product protection. *Id*. The documents at issue fell into two categories: 1) documents created ten years after the plaintiff's trial regarding the decision to do DNA testing; and 2) documents created during the course of the plaintiff's trial. *Id.* at 34. Though the court found that both categories of documents were privileged, it reasoned that "where the decision making process itself is the subject of the litigation, it is inappropriate to allow the deliberative process privilege to preclude discovery of relevant information." *Id*. at 34 (citing *Williams v. City of Boston*, 213 F.R.D. 99 (D. Mass. 2003)). Thus, it ordered production of the documents created during the trial because they shed light on the allegedly tainted trial that was a focal point of the plaintiff's claims. By contrast, documents created years after the trial had limited relevance and did not have to be produced. *Id*.; cf. *Stamps*, 38 F. Supp. 3d at 141 (plaintiff could not make a sufficient showing to obtain records from the district attorney's investigation into a police officer involved shooting where it was not the investigation at issue, but rather the shooting).

The D.A.'s Office argues that its prosecution of the plaintiff cannot be at issue here because the D.A.'s Office is not a defendant. But no member of the district attorney's office was a defendant in *Velazquez* either. It is the nature of the plaintiff's case, and not the defendants named in the complaint, that puts the prosecution at issue. Here, where the plaintiff's case

focuses on when particular evidence was turned over during the prosecution of the plaintiff, the prosecution is unquestionably at issue. Documents that shed light on who had possession of exculpatory evidence, when they had it, and the decision to produce it are particularly important to allow both sides to fully prepare their cases. With that framework in mind, the court treats the 36 disputed documents as follows:

1. The documents Bates stamped 00006-00009, 00018-00021, 00026-00028, 00083, 00097-00101 and 00127-00130 relate to discovery and other pretrial matters and were created during the prosecution of the plaintiff. Although they relate to the D.A.'s Office's internal decision making process and are protected by deliberative process privilege and work product protection, they should be PRODUCED for use in this case because they shed light on matters central to this litigation, including the timeline and strategy of the prosecution of the plaintiff. But, to the extent that these documents contain information related to the Kim Poindexter prosecution, that information should be redacted because it has no relevance here.

2. The documents Bates stamped 00051, 00060-00061, 00062-00063, 00075-00080 and 00219-00220 discuss the confidential informant who implicated the plaintiff. These documents contain analysis regarding the prosecution of the plaintiff and the Kevin Davis prosecution and are protected by the deliberative process privilege and work product protection. However, because the defendants' knowledge of the informant's veracity is another central issue here, these documents should be PRODUCED for use in this case.

3. The documents Bates stamped 00057-00058, 00201, 00203, 00221, 00223-00225, 00254 and 00259-00260 include intake forms, expenditure reports and other purely factual documents prepared during the prosecution of the plaintiff. These documents are not protected by deliberative process privilege because they contain no analysis, but some are ordinary work product. All of these documents relate to the prosecution of the plaintiff and should be PRODUCED for use in this case.

4. The documents Bates stamped 00066-00073 are emails regarding scheduling meetings related to the prosecution of the plaintiff. These documents contain no analysis and are not protected by deliberative process privilege, but they are ordinary work product. Again, these documents should be PRODUCED because they shed light on the prosecution at issue here.

5. The documents Bates stamped 00059, 00086, 00088-00089 and 00180 relate solely to either the Kevin Davis prosecution or the D.A.'s Office's response to the plaintiff's subpoena in this case. These documents were prepared in anticipation of litigation and contain the D.A.'s Office's analysis regarding that litigation so the deliberative process privilege and work product protection apply. Because the documents were not created during the prosecution of the plaintiff, they have limited relevance here. The D.A.'s Office may WITHHOLD these documents.

For the foregoing reasons, within seven days, the D.A.'s Office shall produce redacted copies of the first category of documents enumerated above. The redacted documents may be used for all purposes. No later than fourteen days from the date of this order, counsel for both

the plaintiff and the defendants shall certify that all unredacted copies of documents in the first category have been returned or destroyed. The protective order is withdrawn with regard to the second, third and fourth enumerated categories of documents. These documents may be used for all purposes. Counsel for both the plaintiff and the defendants should certify that all copies of documents in the fifth enumerated category have been returned or destroyed no later than fourteen days from the date of this order.

/s/ Donald L. Cabell
DONALD L. CABELL, U.S.M.J.

DATED: June 25, 2015