UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

HERBERT DAVIS,

    Plaintiff,

v.                            Civil Action No. 13-cv-11900-IT

PAUL W. MURPHY, STEPHEN M.
MEADE, and STEPHEN C. McMANUS,

    Defendants.

MEMORANDUM & ORDER

August 24, 2017

TALWANI, D.J.

Currently pending before this court is Plaintiff Herbert Davis' Motion to Compel [#159]. Plaintiff seeks an order from this court compelling the Suffolk County District Attorney's Office (the "D.A.'s Office") to produce six documents responsive to a December 2016 Subpoena. The D.A.'s Office asserts in its Opposition to Plaintiff's Motion to Compel ["D.A.'s Opp'n"] [#162] that the documents are protected under the work product doctrine.[1]

I.     Background

In December 2016, with this court's authorization, see Elec. Order [#130], Plaintiff issued a subpoena to the D.A.'s Office seeking documents relating to confidential informant Darren Sheridan. Mot. Compel 1 [#159]. In addition to producing what it concluded were responsive, non-privileged materials, the D.A.'s Office also provided Plaintiff with two privilege logs, on February 21, 2017, and June 30, 2017. D.A.'s Opp'n, Exs. 1-2 [#162-1, #162-2].

---

[1] The D.A.'s Office asserted in its privilege log that the documents were also protected by the deliberative process privilege, but did not press that privilege in its opposition, see D.A.'s Opp'n [#162], or during oral argument, resting instead on the work product doctrine.

Plaintiff has challenged the privilege designation for six of those documents. The six documents pertain to Commonwealth v. Peete, SUCR2010-10628, and Commonwealth v. Carter, SUCR2010-10629, two cases close in time to the events at issue here, and in which confidential informant Darren Sheridan was involved. Although the documents are undated, based on counsel's representations, it appears as though the documents graft onto the larger chronology of the alleged events as follows:

- On April 22, 2010, Defendant Stephen C. McManus assisted the Federal Bureau of Investigation in orchestrating a controlled buy of narcotics from Shawn Peete and Terry Carter, using Darren Sheridan as a confidential informant. Mot. for Disc., Ex. 4, at 8 [#123-4]. Sheridan was provided with $2,500 of buy money. Id. Although no exchange of narcotics took place, Peete and Carter took the buy money from Sheridan. Id. at 8-9. Only $2,050 of the buy money was recovered—the remaining $450 was never found. Id. at 9.

- *Thereafter, but prior to the issuance of Peete and Carter's indictments on June 21, 2010, an Assistant District Attorney apparently authored the first document at issue here, an undated, internal memorandum regarding the Peete and Carter prosecutions, bearing Document ID Numbers CaseA000004-06; CaseA000010-12; CaseA000033-35; CaseA000311-13.*

- In August 2010, Defendants and other law enforcement officers began investigating a possible firearm sale by Plaintiff. Mot. for Disc. 3 [#123].

- On September 23, 2010, after Sheridan identified Plaintiff for a gun and drug transaction, and then purportedly captured that transaction by video and audio device, Defendants arrested Plaintiff. First Am. Compl. ¶¶ 3, 14, 17-18 [#108]; Pl.'s Opp'n to Dist. Attorney's Mot. to Quash 3 [#58]; Pl.'s Opp'n to Dist. Attorney's Mot. to Quash, Ex. 2, at 3 [#58-2]. The police immediately executed a search warrant, but $3,100 of the government's buy money was not found. Id. at 6.

- On January 20, 2011, Assistant District Attorney Brian Fahy stated at a hearing on a motion to compel production of the September 23, 2010, videotape that he wanted to be sure about the cooperating witness's safety before giving the video out, that he had reviewed the video, and that he thought he had "either four or five additional cases that mirror this similar type of an operation, all with that same officer, Detective McManus from Boston Police . . . ." Id. at 10:14-24. The state was ordered to produce the video. First Am. Compl., ¶ 40 [#108].

- *Sometime after Plaintiff's arrest, but before his release from custody, Assistant District Attorney Fahy authored the sixth document at issue here, an undated, internal memorandum to Assistant District Attorney Allison Callahan regarding the Peete and Carter prosecutions, bearing Document ID Numbers CaseA000421-23.*

2

- After the state court judge viewed the September 23, 2010, videotape, she immediately reduced Plaintiff's bail to personal recognizance, and on January 28, 2011, Plaintiff was released from jail. First Am. Compl. ¶ 7 [#108].

- On March 28, 2011, Assistant District Attorney Kathryn Hinman filed a *nolle prosequi*, stating that the D.A.'s Office would no longer prosecute Plaintiff. Id. ¶ 42.

- *At some time thereafter, unidentified Assistant District Attorney(s) apparently drafted the remaining documents at issue here, which relate to the D.A.'s Office's preparation for the Peete and Carter trials, and which bear Document ID Numbers CaseA000068-69 (second document); CaseA000070-71 (third document); CaseA000748-49 (fourth document); and CaseA001205 (fifth document).*

- On July 19, 2011, Assistant District Attorney Callahan gave notice of discovery in the Commonwealth v. Peete, SUCR2010-10628, and Commonwealth v. Carter, SUCR2010-10629, reporting that "Darren Sheridan was involved in the investigation and subsequent indictment of Herbert Davis for the sale of a firearm (Docket #SUCR2011-10005.) The Commonwealth subsequently determined that it could not go forward based on the state of the evidence and difficulty with the identification of the defendant and another individual. No further charges have been sought at this time." Mot. Compel, Ex. 2, at 1 [#159-2].

- McManus and Sheridan both testified at trial in Commonwealth v. Peete, SUCR2010-10628, and Commonwealth v. Carter, SUCR2010-10629, in August 2011. Mot. for Disc., Ex. 4, at 3, 5, 8, 18-19 [#123-4].

- More recently, McManus testified at his deposition and claimed in response to interrogatories that the first time he met Sheridan was in September 2010. Mot. for Disc., Ex. 3, at 3 [#123-3].

II. Analysis

Plaintiff's first motion to compel regarding the December 2016 Subpoena concerned the parties' dispute as to the scope of that request, which included documents prepared after the dismissal of the criminal case against Plaintiff. Mot. to Compel the Suffolk County Dist. Attorney's Office to Comply With Pl.'s Subpoena [#140]. The court found that Plaintiff was entitled to documents, regardless of their date:

> (a) that may tend to show (or from which an inference may be drawn about) any Defendant's knowledge of Sheridan's veracity (or lack thereof) prior to the dismissal of Plaintiff's criminal case; or (b) that may tend to show any Defendant's knowledge of statements or facts from which a jury could conclude that the

> Defendant should have known of, or recklessly disregarded, Sheridan's veracity (or lack thereof) prior to dismissal of Plaintiff's criminal case.

Id. at 4. The court granted Plaintiff's motion with respect to the scope and directed the D.A.'s Office to produce all non-privileged documents, through the present date, concerning: (a) any interaction that any Defendant had with Sheridan; or (b) any information that any Defendant was aware of concerning Sheridan. The court also ordered the D.A.'s Office to produce a privilege log for responsive documents it was seeking to withhold.

Plaintiff's instant motion challenges the D.A.'s Office's assertion of protection under the attorney work product doctrine for the six documents described briefly above. The court finds that, as described, the documents are attorney work product, and that at least portions of those documents may amount to opinion work product for which the D.A.'s Office seeks heightened protection. But only one of three policies cited by the D.A.'s Office—the general public policy of affording the D.A.'s Office "a certain degree of privacy" in preparing its cases, D.A.'s Opp'n 7-8 [#162],—supports invocation of the work product doctrine. See Order [#86] (quoting United States v. Nobles, 422 U.S. 225, 237 (1975)) (noting that other policies not met here when there is neither ongoing litigation nor a concern that the parties will 'free load' the work of opposing counsel). The court must balance this general public policy goal against the countervailing public policy concerns raised by a credible claim that law enforcement officers relied solely on a confidential witness while knowing that this witness was dishonest. Given the serious, specific concerns raised by this possibility, the general public policy goal must give way.

Accordingly, the court will grant Plaintiff's motion to compel, limited to those portions of the six disputed documents that contain information previously found to be within the appropriate scope of the subpoena, namely: (a) information that may tend to show (or from which an inference may be drawn about) any Defendant's knowledge of Sheridan's veracity (or

4

lack thereof) prior to the dismissal of Plaintiff's criminal case; or (b) information that may tend to show any Defendant's knowledge of statements or facts from which a jury could conclude that the Defendant should have known of, or recklessly disregarded, Sheridan's veracity (or lack thereof) prior to dismissal of Plaintiff's criminal case. The court will deny the motion to compel insofar as the documents contain purely legal opinions or other information. The court will refer the matter to the Magistrate Judge assigned to this case for *in camera* review of the disputed documents and make a determination of what documents, or portions thereof, should be produced pursuant to this order.

III. Conclusion

For the foregoing reasons, Plaintiff's Motion to Compel [#159] is GRANTED IN PART AND DENIED IN PART as set forth herein, and is REFERRED to the Magistrate Judge assigned to this case for *in camera* review of the six disputed documents, which shall be provided promptly by the D.A.'s Office to the Magistrate Judge.

IT IS SO ORDERED.

Date: August 24, 2017 /s/ Indira Talwani
United States District Judge